

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK/SMS
F. #2018R00369

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 12, 2024

By E-Mail and ECF

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Carmelo Polito, et al.
             Criminal Docket No. 22-356 (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this letter in response to defendant Carmelo Polito's motion to modify the bail conditions that were set only three weeks ago placing him on home incarceration pending trial. The defendant asks the Court to authorize the defendant to once again be able to leave his residence, purportedly to go to work. As explained below, on March 20, 2024, the defendant was placed on home incarceration because of his flagrant disregard for the law and his conditions of release, usually while he was meant to be at his supposed place of employment. Because the only substantive change since the recent bail modification hearing is that the defendant has now entered a plea of guilty to Count One of the pending indictment—thus removing the primary reason he was not detained and flipping the statutory presumption in favor of his detention—the Court should deny his motion to modify his conditions of release.

    I.    The Defendant Would Have Been Detained on March 20, 2024, But for the Pending Trial Date

      On March 15, 2024, based on the defendant's egregious ongoing violations of his conditions of release, the government moved to revoke the defendant's bail. A copy of the government's letter in support of that motion is attached as Exhibit 1 and incorporated by reference into this response. In general, the government proffered evidence that, since his pretrial release in 2022, Polito—a soldier and Acting Captain within the Genovese Crime Family of La Cosa Nostra—continued to participate in the affairs of the Genovese Crime Family. As particularly relevant here, the evidence showed that the defendant had primarily been engaging in racketeering-related activities while he was supposed to be at his place of employment. Among other things, Polito possessed a "burner" phone to communicate with members of organized crime and conducted meetings with an associate of the Genovese Crime Family at a café across the street

from his alleged workplace. Law enforcement never observed Polito performing construction work during their multiple surveillances.

At the bail hearing held on March 20, 2024, the defendant's violations of his conditions of release were virtually uncontested: defense counsel conceded that the defendant had violated the conditions of release and the Court similarly admonished the defendant for his violations. Nevertheless, defense counsel argued that in order to prepare for the upcoming trial, the defendant should instead be subject to home incarceration. Defense counsel did not mention the defendant's health insurance at the bail hearing or in any of the papers associated with the government's motion to revoke the defendant's bail.

Largely because of the difficulties that the defendant's detention could have imposed on assuring that the trial proceeded as scheduled, the Court denied the government's motion to detain the defendant pending trial. Instead, the Court ordered that he be subject to home incarceration with electronic monitoring.

On April 5, 2024, the defendant entered a guilty plea to Count One of the indictment. During the plea hearing, the defendant admitted that he had engaged in a pattern of racketeering activity that included both conducting an illegal gambling business and an attempted extortion. Two days later, defense counsel filed the instant motion, seeking to modify the defendant's bail conditions. Counsel asks that the defendant be allowed to return to his "employment" so that he will be able to work sufficient hours to have health insurance coverage for himself and his spouse. See ECF No. 98.

II. The Defendant's Violations of His Conditions of Release and Ongoing Criminal Activities Were Far Worse Than Previously Known

Since the government filed its prior motion to remand, law enforcement agents have continued to review the cellular devices seized from the defendant pursuant to the search warrant executed on February 6, 2024. That ongoing review has revealed that the defendant has multiple contacts via encrypted messages with co-defendants, the families of co-defendants, and other members and associates involved in organized crime. For example, WhatsApp records reflect that the defendant regularly communicated with Joseph Rutigliano, a co-defendant in the defendant's pending case. WhatsApp records also show that the defendant was in frequent contact with a family member of Joseph Macario, another co-defendant. Finally, WhatsApp records show that the defendant was in regular daily contact with another convicted member of the Genovese Crime Family—Joseph Celso—while Celso was on trial for an extortionate collection of credit conspiracy and obstruction of justice before Judge Komittee. See 22-CR-194. Celso was subsequently convicted of the conspiracy charge.

The review of the defendant's phone also revealed an Internet search history replete with evidence of the defendant's attempts to violate the conditions of release, commit additional crimes, and obstruct justice. For example, the defendant's search history revealed his attempts to identify telephones that could not be monitored by the government, searching terms such as "is there a cell phone that cannot be tapped." Similarly, the defendant was also conducting Internet searches to identify potential law enforcement cooperating witnesses in the case against him,

2

searching terms such as "Bonanno Rat." The review is ongoing, but the results uncovered thus far speak volumes about the defendant's total unwillingness to abide by the law and by his agreed upon conditions of release.

III.   The Defendant's Motion Should Be Denied

The defendant is presumptively subject to remand pending sentencing. Title 18, United States Code, Section 3143(a)(1) provides that, where a defendant has been found guilty of an offense and is awaiting imposition of sentence, the Court shall order the defendant detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). In addition, Title 18, United States Code, Section 3143(a)(2) provides that where, as here, a defendant is convicted of a "crime of violence," he must be detained unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community" and "(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person. 18 U.S.C. § 3143(a)(2); see United States v. Gotti, 219 F. Supp. 2d 296, 298 (E.D.N.Y. 2002) ("[E]xtortion ... [is a] crime of violence within the meaning of the Bail Reform Act.") (internal quotation marks and citation omitted); see also United States v. Santora, 225 F. App'x 21, 22 (2d Cir. 2007) (upholding the district court's finding for pretrial purposes that the defendant "had committed a crime of violence, specifically conspiracy to commit extortion."); United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002) (affirming finding that defendant had been charged with a crime of violence where defendant was charged in a RICO conspiracy in which one of the purposes of the enterprise was to commit extortion); United States v. DiSano, No. 18-CR-337-3 (WFK), 2018 WL 11191538, at *3 (E.D.N.Y. Dec. 14, 2018) (collecting cases). Moreover, without the looming trial date and the need to prepare with his counsel, the defendant's only stated basis to stave off the prior motion to remand has vanished.

Notwithstanding the presumption, the government is not seeking the defendant's detention at this time. But given that he was found with a "burner" cellphone mere weeks ago and has a long history of conducting racketeering activity while purportedly "working" while on pretrial release, his request is particularly galling. The defendant is asking the Court to allow him

to return to a no-show job that was the basis for his continued involvement in the activities of the Genovese Crime Family.  The request should be denied.

> Respectfully submitted,
>
> BREON PEACE
> United States Attorney
>
> By:      /s/
> Anna L. Karamigios
> Sean M. Sherman
> Assistant U.S. Attorneys
> (718) 254-7000

cc:  Defense Counsel (by ECF)
     Clerk of Court (by ECF)

# EXHIBIT 1



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| ALK/SMS | *271 Cadman Plaza East* |
| F. #2018R00369 | *Brooklyn, New York 11201* |

March 15, 2024

By E-Mail and ECF

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Carmine Polito, et al.
       Criminal Docket No. 22-356 (ENV)

Dear Judge Vitaliano:

    The government respectfully submits this letter to request that the Court revoke the defendant Carmelo "Carmine" Polito's bail and issue an order of detention pending trial. As explained below, since his pretrial release in 2022, Polito—an Acting Captain and soldier within the Genovese Crime Family of La Cosa Nostra—has continued to participate in the affairs of the Genovese Crime Family in flagrant disregard for the law and for his conditions of release. Because Polito's continued participation in the Genovese Crime Family constitutes both a violation of his conditions of release and continuing criminal conduct, his bail should be revoked pursuant to Title 18, United States Code, Section 3148.

  I. Background

    A. The Defendant's Offense Conduct

    On August 4, 2022, a grand jury sitting in the Eastern District of New York returned the Indictment in this case, which charges the defendant along with Joseph Macario, also known as "Joe Fish," Salvatore Rubino, also known as "Sal the Shoemaker," and Joseph Rutigliano, also known as "Joe Box" with racketeering, in violation of Title 18, United States Code, Section 1962(c); money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and the operation of several illegal gambling businesses, in violation of Title 18, United States Code, Section 1955(a). Polito is also charged in the Indictment with the operation of an illegal online sports gambling business and attempted Hobbs Act extortion related to that business, in violation of Title 18, United States Code, Sections 1951(a) and 1955(a).

These charges stem in part from the defendants' operation of several lucrative gambling businesses on Long Island, the proceeds of which were "kicked up," or distributed to higher ranking members through the Genovese Crime Family. The gambling operations were typically concealed in the back rooms of businesses and social clubs. The defendant's extortion charge arises from the defendant's attempted extortion of an individual who owed money in connection with sports bets the individual lost on the defendant's unlawful gambling website. In furtherance of that attempted extortion, the defendant instructed an associate to relay a message to the debtor: "Tell him I'm going to put him under the fucking bridge."

### B. The Defendant's Pretrial Release

On August 16, 2022, Polito was arraigned and released pending trial on a $1.1 million bond secured by his primary residence. The defendant's pretrial conditions, which the Court ordered, and the defendant acknowledged he understood, include the requirement that he "must avoid all contact" with "codefendants" and "members or associates of La Cosa Nostra." Polito is, of course, also required to refrain from committing additional crimes.

At the time of his arrest, Polito reported to pretrial services and the Court that he was employed by Sorbara Construction and had worked for that company since October 2021. On the basis of that representation, the Court placed Polito on curfew rather than home detention. Since then, Polito has continued to report to pretrial services that he is employed in construction, and that, as of September 24, 2023, his employer had changed from Sorbara Construction to High Rise Safety Systems, Inc.

### II. Polito's Bail Should Be Revoked Due to His Consistent Violation of His Release Conditions and Ongoing Participation in the Affairs of the Genovese Crime Family

Despite the bail requirement that he avoid "all contact" with codefendants and members or associates of La Cosa Nostra, as detailed further below, the government's ongoing investigation[1] has revealed that since at least December 2022—mere months after his arrest—Polito has blatantly and continuously flouted this Court's order by continuing to participate in the affairs of the Genovese Crime Family. The investigation has further revealed that, contrary to his representations to pretrial services, Polito does not work in construction but instead uses a café across the street from his alleged work location to hold meetings relating to the Genovese Crime Family's affairs. In light of Polito's ongoing criminal activity and utter disregard for his conditions of pretrial release, the Court should revoke bail.

---

[1] The government's investigation has included the execution of a judicially authorized warrant to search Polito's person and cellphones ("the Warrant"). The affidavit in support of the Warrant is attached hereto under seal as Exhibit A.

2

A. Summary of Evidence Relating to Polito's Ongoing Participation in the Genovese Crime Family

1. Electronic Communications

As noted, since his arrest and pretrial release, Polito has continued to communicate with members and associates of the Genovese Crime Family, including using encrypted applications and "burner" cellphones to avoid detection. For instance, in June 2023 a cellphone was seized from Genovese Crime Family associate Michael Sellick incident to his arrest for Hobbs Act robbery and brandishing a firearm during the robbery. See United States v. Cerchio et al., No. 23 CR 330 (PAE) (S.D.N.Y.).[2] A review of Sellick's cellphone pursuant to a judicially authorized search warrant revealed approximately 74 voice calls between Polito and Sellick between December 6, 2022 and June 4, 2023, each of which Polito conducted using Signal, an encrypted communication application. As explained in the Warrant, Polito uses Sellick as an intermediary to communicate and arrange meetings with Anthony Romanello, an Acting Captain in the Genovese Crime Family, and other members and associates of the Genovese Crime Family. See Ex. A ¶¶ 10-16.

Evidence seized pursuant to the Warrant further confirms that Polito continues to communicate with members and associates of the Genovese Crime Family. For example, the search of Polito's "burner" phone[3] revealed that on January 13, 2024, Polito sent a text message to a contact saved as "Dom" notifying "Dom" that, "this is my new one"—i.e., that Polito had obtained a new burner cellphone and was providing the new number to "Dom." Law enforcement subsequently confirmed that "Dom" is Dominick Dionisio, a soldier in the Genovese Crime Family whose criminal history includes three racketeering convictions involving attempted murder, robbery, loan sharking, narcotics distribution and money laundering. Polito's burner phone also contained a contact saved as "Jimmy." Law enforcement has identified "Jimmy" as James Rossi, who is known to law enforcement to be a soldier in the Genovese Crime Family and has previous convictions for operating illegal gambling businesses and enterprise corruption (i.e., New York state racketeering). By way of further example, Polito's burner phone contained a contact saved as "J Red," which law enforcement has determined is the phone number for Joseph DiChiara, who is known to law enforcement to be a Captain in the Genovese Crime Family. DiChiara has a previous conviction in the Southern District of New York for cocaine and marijuana distribution. The government's pre-Indictment investigation revealed Polito meeting with Dionisio, Rossi, DiChiara and other members and associates of the Genovese Crime Family on multiple occasions. Indeed, during one intercepted phone call, Polito discussed recruiting Dionisio to aid Polito in extorting John Doe 1, as charged in the Indictment. Finally, Polito's burner phone contained a contact saved only as "Matt," which law enforcement has determined belongs to Matthew Daddino. Daddino is known to law enforcement as a recently inducted member of the Genovese

---

[2] Sellick's previous convictions include convictions for multiple armed robberies and the use of a firearm in connection with one of those robberies, for which he received a sentence of 228 months' imprisonment. See United States v. Sellick, et al., No. 98 CR 594 (E.D.N.Y.).

[3] To date, law enforcement has been unable to extract a second phone seized from Polito pursuant to the Warrant.

Crime Family and was observed by law enforcement accompanying Romanello during Romanello's December 2023 extortion trial in this District.

2. Surveillances

Surveillance has further confirmed that Polito continues to participate in the affairs of the Genovese Crime Family. As explained in the Warrant, Polito was observed on numerous occasions from November 2, 2023 through January 2024 meeting with an associate of the Genovese Crime Family who is in the midst of an intrafamily dispute. Ex. A ¶¶ 29-30. Polito conducted these meetings at a café across the street from his alleged workplace. Law enforcement never observed Polito working during their multiple surveillances. Instead, Polito was routinely observed holding meetings in the café across the street, leaving the alleged worksite by mid-morning and returning to his home. On numerous occasions, Polito then left his home and went to a "members only" social club in Whitestone, New York. During surveillance of this social club, law enforcement frequently observed a vehicle registered to an unindicted coconspirator of the charged gambling and money laundering operation present at the social club during Polito's visits.

Not only has Polito been flagrantly communicating with members and associates of La Cosa Nostra, he has also violated the condition that he avoid all contact with co-defendants. For example, on the morning of February 6, 2023, law enforcement executed the Warrant as Polito exited the "members only" social club. That day, law enforcement observed Polito enter the social club at approximately 11:30 a.m. Approximately twenty minutes later, law enforcement observed Polito's co-defendant in this case, Joseph Rutigliano, also known as "Joe Box," leave the social club. At approximately 1:30 p.m., Polito exited the social club and law enforcement executed the Warrant. Law enforcement recovered $2,040 in cash organized by denomination from Polito's front pants pocket. Law enforcement also recovered Polito's burner phone, which Polito had never reported to pretrial services, and a second cellphone.

B. The Defendant's Bail Should Be Revoked

Title 18, United States Code, Section 3148 provides, in relevant part, that a defendant "who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." Upon a motion from the government to revoke an order of release, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer (1) finds that there is probable cause to believe that the person has committed a Federal, State or local crime while on release; or clear and convincing evidence that the person has violated any other condition of release; and (2) finds that based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

Since practically the start of his pretrial release, the defendant treated this Court's order setting release conditions as a fig leaf to continue to participate in Genovese Crime Family business. Notably, as of the date of this letter, Polito has yet to report to his pretrial services officer that he ever possessed a second cellphone or that the second cellphone was seized from him by law enforcement agents. Polito's federal arrest and racketeering charges have done nothing to

4

deter him from continued criminal conduct. He cannot be trusted to abide by any combination of conditions of release and thus must be remanded.

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney

By:          /s/
                              Anna L. Karamigios
                              Sean M. Sherman
                              Assistant U.S. Attorneys
                              (718) 254-7000

cc:     Clerk of Court (by ECF)
        Gerald McMahon, Esq. (by ECF and Email)
        Pretrial Services (by Email)